The STATE of Texas, Appellant,

v.

GAMBLING DEVICE, Appellee.

No. 01–92–00045–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 8, 1993.

Rehearing Denied Aug. 12, 1993.

Richard L. Moore, Houston, for appellant.

William Delmore, III, John B. Holmes, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and WILSON and O'CONNOR, JJ.

## OPINION

WILSON, Justice.

This appeal arises from a forfeiture proceeding instituted by the State of Texas pursuant to article 18.18 of the Texas Code of Criminal Procedure (Vernon 1993). In three points of error, the State appeals the trial court's denial of its petition for forfeiture. We reverse and remand.

## I. Fact Summary

On December 2, 1990, the State seized a trailer containing 24 "Bulldozer" games, which were being operated on a grocery store parking lot. The seized games fall within a category of amusement games known as "pusher" machines or "penny falls." These games generally consist of five elements: a playing surface, a sweep-arm, a lip, side chutes, and a shooter. In Bulldozer, a player uses the shooter to drop tokens onto a playing surface containing a mass of chips and/or trinkets. The player then uses the sweep-arm (in this case a bulldozer blade) to push the mass forward towards the front lip. The player can stop the arm by pushing a "stop button," and the shooter can be moved laterally to permit the player to attempt to direct his token toward a particular portion of the playing surface. Those chips, tokens, or trinkets which fall over the lip are retained by the player. The retained tokens permit the player to continue playing, and the chips may be traded for a prize. Those items which fall into the "out-of-bounds" side chutes are retained by the game's operator.

The State alleges these games are "gambling devices" under TEX.PENAL CODE ANN. §§ 47.01(3) and 47.06 (Vernon 1989). Pursuant to an agreement of counsel, the State first prosecuted the employee who operated the games. The court accepted his mistake of fact defense and acquitted him of the charged offense. The indictments against the other defendants were dismissed upon motion of the State. The trial court then heard the forfeiture proceeding, upon the parties' stipulation that it consider all of the evidence presented during the previous criminal proceedings.

---

1. Section 47.06 provides, in pertinent part:
 A person commits an offense if he knowingly owns, manufactures, transfers, or possesses any gambling device that he knows is designed for gambling purposes or any equipment that he knows is designed as a subassembly or essential part of a gambling device. TEX.PENAL CODE ANN. § 47.06 (Vernon 1989).

2. See also McMorris v. State, 516 S.W.2d 927, 929 (Tex.Crim.App.1974) (quoting Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)):

The trial court found section 47.06, which prohibits the possession of a gambling device,[1] and section 47.01(3), which defines the term "gambling device," unconstitutionally vague and unenforceable as applied to this particular game. On that basis, the court denied the State's petition for forfeiture.

## II. Constitutionality of the Statute as Applied to the Owner

In its first point of error, the State contends the trial court erred in finding that the statutes defining the offense of possession and ownership of a gambling device are unconstitutionally vague as applied to the games seized from the owner.

■ Vagueness doctrine focuses both on actual notice to citizens and arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357–58, 103 S.Ct. 1855, 1858–59, 75 L.Ed.2d 903 (1983). A statute is unconstitutionally vague if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," or if it "encourages arbitrary and erratic arrests and convictions." *Goocher v. State*, 633 S.W.2d 860, 865 (Tex. Crim.App. [Panel Op.] 1982); *see also Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). Either is an independent ground. *Adley v. State*, 718 S.W.2d 682, 685 (Tex.Crim.App.1985). Thus, a penal statute must define an offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, and do so in a manner that does not encourage arbitrary and discriminatory enforcement. *Lawson*, 461 U.S. at 357, 103 S.Ct. at 1858; *Clark v. State*, 665 S.W.2d 476, 482 (Tex. Crim.App.1984).[2]

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be

Where no first amendment rights are involved, the reviewing court need only scrutinize a challenged statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct. *Briggs v. State,* 740 S.W.2d 803, 806 (Tex.Crim.App.1987); *see also United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975) (vagueness challenges to statutes which do not involve first amendment freedoms must be examined in the light of the facts of the case at hand). To prevail in a claim that a statute is vague in its application, a party must "show that in its operation the statute is unconstitutional to him in his situation; that it may be unconstitutional as to others is not sufficient." *Parent v. State,* 621 S.W.2d 796, 797 (Tex.Crim.App. 1981).[3]

### A. Lack of Notice

A law must be sufficiently definite that its terms and provisions may be known, understood, and applied. *Floyd v. State,* 575 S.W.2d 21, 23 (Tex.Crim.App. [Panel Op.] 1978). A statute is not unconstitutionally vague merely because it is imprecise, but "only when no standard of conduct is obtained at all; when no core of prohibited activity is defined." *Briggs,* 740 S.W.2d at 806. Although the present case arises in the context of a forfeiture proceeding, at issue is the language of a penal statute defining the term "gambling device."[4]

Texas Penal Code section 47.01(3) provides:

> (3) "Gambling device" means any contrivance that for a consideration affords the player an opportunity to obtain anything of value, *the award of which is determined by chance, even though accompanied by some skill,* whether or

not the prize is automatically paid by the contrivance.

Tex.Penal Code Ann. § 47.01(3) (Vernon 1989) (emphasis added).

The parties do not dispute that the Bulldozer games are contrivances that, for a consideration, afford players an opportunity to obtain something of value. The dispute focuses on the meaning of the phrase, "the award of which is determined by chance, even though accompanied by some skill." The owner contends the lack of a statutory definition of the term "chance" renders the definition of "gambling device" unconstitutionally vague. Specifically, the owner claims that because the statute does not specify the *degree* of chance necessary for an award to be "determined by chance," the average citizen cannot determine whether a given contrivance is a gambling device.

A statute is not rendered unconstitutionally vague merely because its words or terms are not specifically defined. *Engelking v. State,* 750 S.W.2d 213, 215 (Tex.Crim.App.1988); *Floyd,* 575 S.W.2d at 23. In the absence of special definitions, statutory language under attack as vague can be measured by common understanding and practices, or construed in a sense generally understood. *Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App. [Panel Op.] 1979). Terms not defined in a statute are to be given their plain and ordinary meaning, and words defined in dictionaries and with meaning so well known as to be understood by persons of ordinary intelligence are not to be considered vague and indefinite. *Floyd,* 575 S.W.2d at 23.

The statutory definition of a gambling device clearly encompasses "pure chance" contrivances: those contrivances that are designed to achieve a result by the opera-

---

prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application ...

**3.** It has also been held that a vagueness challenge will be upheld only if a statute is imper-

missibly vague in *all* of its applications. *McDonald v. State,* 693 S.W.2d 660, 661 (Tex. App.—Dallas 1985, no pet.); *see also Briggs,* 740 S.W.2d at 806.

**4.** We note that the thrust of the owner's vagueness challenge is directed at section 47.01(3). The challenge to section 47.06 is based upon the language in section 47.01(3).

tion of chance alone. It is equally clear that the definition excludes "pure skill" contrivances: those contrivances that are not designed to incorporate the element of chance, and whose results are determined solely by the player's exercise of skill.[5] The vagueness in the statute, if any, arises when it is applied to contrivances that incorporate some combination of chance and skill.

■ According to the appellee, "[t]he unconstitutional vagueness is due to the fact that the statute does not specify whether, in order to be a gambling device, the 'contrivance' would require a one percent (1%) chance factor, a twenty-five percent (25%) chance factor, or a one hundred percent (100%) chance factor." We find this very omission to be dispositive against the appellee. We interpret the statute to apply to contrivances that incorporate any element of chance, even if the exercise of skill also influences the outcome.

We do not read the definition at issue as requiring any quantitative comparison of the respective proportions of chance and skill involved in a particular contrivance. Rather, the statute requires only that the outcome of any trial be "determined by chance." A contrivance that is designed to incorporate the element of chance to influence whether an award is provided to a player is a contrivance whose outcome is determined by chance. A contrivance which also incorporates the remaining statutory elements is a "gambling device" within the meaning of § 47.01(3).

Under the plain and ordinary meaning of its words, section 47.01(3) clearly encompasses certain contrivances whose outcomes are influenced by skill. According to the statutory language, a device is a gambling device if its outcome is "deter-

mined by chance, even though accompanied by *some* skill." (Emphasis added.) Webster's dictionary defines the word "some" as follows:

> [B]eing of an unspecified but appreciable or not inconsiderable quantity, amount, extent or degree: more than a little: being in number at least or often more than a few....

Websters Third New Int'l Dictionary (Unabridged) 2171 def. 3 (1971). Thus, the definition of a gambling device explicitly includes a device whose outcome is determined by chance, even though that outcome may also be influenced by an appreciable amount of skill.

■ Even a contrivance that is predominantly a game of skill may be determined by chance. For example, assume that a novice player of Bulldozer, through a minimal exercise of skill, has a 25 percent chance of winning an award. Assume also that an experienced Bulldozer player, through the exercise of his superior skill, has a 75 percent chance of winning an award. Chance would appear to predominate over skill in the former case, while in the latter case, skill would appear to predominate over chance. Yet in *either* case, the outcome in each particular game played is "determined by chance." A player's level of skill may influence the *degree* of chance involved, but it does not eliminate the element of chance altogether. The outcome is always determined by chance because no player, through the exercise of skill alone, can control the outcome of any given trial. It is chance that finally determines the outcome of each and every trial. Thus, it is the incorporation of chance that is the essential element of a gambling device, not the incorporation of a particular proportion of chance and skill.[6]

---

**5.** We recognize that even in those contrivances which do not intentionally incorporate an element of chance, an unexpected or accidental result may occur. It may be asserted that such a result is "determined by chance." However, we recognize a distinction between those contrivances which may, on occasion, be influenced by some unforeseen event or circumstance, and those contrivances which are designed to incorporate an element of chance.

**6.** We note our belief that the legislature intended to define whether a contrivance is a gambling device by an examination of the contrivance itself, not according to the skill of the player standing before it. The fact that a machine may be manipulated to alter the frequency of an award to a skillful player to over 50 percent does not place that machine outside the definition of a gambling device, because the element of chance remains.

This conclusion is consistent with the provisions of the Texas Penal Code related to gambling, taken as a whole. Section 47.02 of the code defines the offense of "gambling." The practice commentary notes that this section "appears to proscribe all forms of gambling." Searcey & Patterson, Practice Commentary, TEX.PENAL CODE ANN. § 47.02 (Vernon 1989). At a minimum, the purpose of this statute is to reach a broad range of gambling activities and prohibit them. Gambling activities are, traditionally, those activities that involve the elements of consideration, chance, and profit. By analogy, gambling devices are devices used in a fashion so as to incorporate these elements, even if the devices also incorporate the element of skill.

We also note the definition of the term "thing of value":

> "Thing of value" means any benefit, but does not include an unrecorded and immediate right of replay not exchangeable for value.

TEX.PENAL CODE ANN. § 47.01(8) (Vernon 1989).

By excepting the award of an immediate right of replay from the definition of a thing of value, the legislature apparently has excluded ordinary, amusement-type pinball machines from this chapter's prohibitions. The clear implication is that the possession of such devices, which incorporate the elements of chance and skill, would otherwise be prohibited.

 Finally, we cannot see where the purpose of the legislature would be served by prohibiting games in which chance is marginally dominant over skill, but at the same time permitting games in which skill is marginally dominant over chance. Such a result would not further any public policy the legislature contemplated under this chapter. In construing a statute, it is the duty of the court, when possible, to ascertain the intent of the legislative body and, when so ascertained, to give effect to that intent. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

 We find the statutory definition of gambling device, when measured by common understanding and practices, fairly apprised the owner of the games of the nature of the conduct it proscribed. *Floyd*, 575 S.W.2d at 23 n. 2.[7]

**B. Selective Enforcement**

 The owner also contends that the statute's vagueness has resulted in selective enforcement against him by the Houston Police Department. Again, a statute is unconstitutionally vague if it "encourages arbitrary and erratic arrests and convictions." *Papachristou*, 405 U.S. at 162, 92 S.Ct. at 843; *Goocher*, 633 S.W.2d at 865.

In *Papachristou*, the United States Supreme Court struck down as vague a vagrancy ordinance because it failed to give persons of ordinary intelligence fair notice that certain conduct was forbidden and because it encouraged arbitrary and erratic arrests and convictions.[8] 405 U.S. at 162, 92 S.Ct. at 843. The Court found that because there were no standards governing

---

**7.** The owner also contends the statutes in question are overbroad. A clear and precise statute may nevertheless be overbroad if in its reach it prohibits constitutionally-protected conduct. *Grayned*, 408 U.S. at 114, 92 S.Ct. at 2302; *McMorris*, 516 S.W.2d at 929. The owner does not point to any constitutionally protected-conduct reached by these statutes. We fail to see how the statutes in question are overbroad.

**8.** The challenged ordinance provided as follows:
> Rogues and vagabonds, or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, thieves, pilferers or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children shall be deemed vagrants and, upon conviction in the Municipal Court shall be punished as provided for Class D offenses.

*Papachristou*, 405 U.S. at 156 n. 1, 92 S.Ct. at 840 n. 1.

the exercise of the discretion granted by the ordinance, it permitted and encouraged arbitrary and discriminatory enforcement of the law by placing "unfettered discretion" in the hands of the police. *Id.* at 168–70, 92 S.Ct. at 846–48.

In *May v. State,* 765 S.W.2d 438 (Tex. Crim.App.1989), the Court of Criminal Appeals struck down a statute defining the offense of harassment as vague. The statute in question provided that certain communications made over the telephone or in writing constituted harassment if they intentionally, knowingly, or recklessly annoyed or alarmed the recipient. *May,* 765 S.W.2d at 439. The court found the statute was vague "in attempting to define what annoys and alarms people, and [in] its failure to specify whose sensibilities are relevant." *Id.* at 440. The court quoted from a federal appellate court decision construing the same statute:

> The Texas courts have made no attempt to construe the terms "annoy" and "alarm" in a manner which lessens their inherent vagueness. Of greater importance, the Texas courts have refused to construe the statute to indicate whose sensibilities must be offended. In the absence of judicial clarification, enforcement officials, as well as the citizens of Texas, are unable to determine what conduct is prohibited by the statute.... By failing to provide reasonably clear guidelines, § 42.07 gives officials unbounded discretion to apply the law selectively and subjects. the exercise of the right to speech to an unascertainable standard.

*Id.* (citations omitted) (quoting *Kramer v. Price,* 712 F.2d 174, 178 (5th Cir.1983)).

▬▬▬ We conclude that selective enforcement of a statute does not, of itself, render a statute unconstitutionally vague. Rather, the *statute* must encourage the selective enforcement in order to be struck down as impermissibly vague. We conclude that a penal statute encourages arbitrary enforcement when it fails to provide

reasonably clear guidelines, thereby giving enforcement officials unbounded discretion to apply the law selectively. *May,* 765 S.W.2d at 440.

The owner points to an October 24, 1985, unpublished letter written by former Attorney General Jim Mattox to buttress his claim that the statute encourages selective enforcement. In that letter, written in response to a request from a former district attorney in Waco, the former attorney general concluded that the "Pusher" or "Bulldozer" game is not a gambling device. While acknowledging that the game incorporates a degree of risk, the letter concludes that because the game also "requires a certain measure of skill for the player to operate it successfully," its outcome is not determined by chance.

We find the conclusion reached in this unpublished letter is clearly erroneous in light of the statutory language that a gambling device is one whose outcome is "determined by chance, *even though accompanied by some skill.*" Furthermore, in a published Attorney General's Opinion, another former attorney general concluded that another "penny falls" game was a gambling device, because it was "dependent to some extent upon chance." Op. Tex.Att'y Gen. No. H–1153 (1978).[9] *See Koy v. Schneider,* 110 Tex. 369, 221 S.W. 880, 885 (1920) (a construction given by the head of an executive department of the state government will be upheld by the courts, unless clearly erroneous); *Commissioners' Court of El Paso County v. El Paso County Sheriff's Deputies Ass'n,* 620 S.W.2d 900, 902 (Tex.Civ.App.—El Paso, 1981, writ ref'd n.r.e.) (opinions of Attorney Generals, while not binding on the judiciary, are persuasive and entitled to consideration).

▬▬▬ We find the statute at issue provides sufficient guidelines to govern the conduct of enforcement officials. The possibility that a former attorney general's letter may have resulted in arbitrary en-

---

9. *See also* Op.Tex.Att'y Gen. No. DM–112 (1992) ("casino night" for charity, where players redeem chips purchased or won for prizes, is illegal under section 47.01); Op.Tex.Att'y Gen. JM–412 (1985) (marble machine is "gambling device" because operation "dependent to some extent upon chance").

forcement of this statute does not establish that this arbitrary enforcement was caused by vagueness in the statute.[10]

### C. Conclusion

 Statutes are vested with a presumption of validity and must be construed in such a way as to uphold their validity. *Ely v. State,* 582 S.W.2d 416, 419 (Tex. Crim.App.1979). A statute that is arguably vague may be given constitutional clarity by applying the standard rules of statutory construction. *Engelking,* 750 S.W.2d at 215. Although the legislature could have been more specific, we find these sections nonetheless incorporate a comprehensible standard of conduct. *See Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971); *Lear v. State,* 753 S.W.2d 737, 739 (Tex.App.—Austin 1988, no pet.). The fact that certain law enforcement personnel may have misinterpreted a statute does not necessarily render it impermissibly vague. Nor does it establish that the statute encourages arbitrary and erratic arrests and convictions. We find sections 47.01(3) and 47.06, as applied to the owner of the games in question, are constitutional.

Point of error one is sustained.

The judgment of the trial court is reversed and the caused remanded for consideration of whether the seized contrivances are "gambling devices" within the meaning of that term as interpreted by this Court.