OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

January 2, 2002

Mr. C. Tom Clowe, Jr.
Chair, Texas Lottery Commission
P.O. Box 16630
Austin, Texas 78761-6630

Opinion No. JC-0449

Re: Whether the Texas Lottery Commission is authorized to approve or disapprove secondary components or features of an electronic bingo card-minding device unrelated to the game of bingo that allow a player to play various games, such as video poker, during a bingo occasion, and related questions (RQ-0383-JC)

Dear Mr. Clowe:

You ask about the Texas Lottery Commission's ("Commission") authority to approve or disapprove secondary components or features of an electronic bingo card-minding device unrelated to the game of bingo that allow a player to play various games, such as video poker, during bingo occasions.[1] We conclude that the Commission is required to examine the secondary components or features of an electronic bingo card-minding device and disapprove them if they allow a player to play a "game of chance" or use a "gambling device" during a bingo occasion. We also conclude that the described video poker game is a prohibited "game of chance." Finally, we conclude that the video poker game, as described to us, is a prohibited gambling device only if it records the "cancellation or removal of credits" awarded; and the credits awarded provide a benefit to which a price can be assigned other than an immediate right of replay. The Commission must determine, in the first instance, whether the video poker game is a gambling device that meets this criterion.

Your request relates to an electronic bingo card-minding device. A "'bingo card-minding device' . . . [is] an electronic or computerized device that allows a bingo player to store, display[,] and mark a bingo card face." Request Letter, *supra* note 1, at 1; *see also* 16 TEX. ADMIN. CODE § 402.541 (2001) (defining "card-minding device"). It essentially allows a player to electronically track the bingo numbers drawn and to similarly mark his or her cards. *See* Request Letter, *supra* note 1, at 1.

The Commission by rule requires manufacturers of bingo card-minding devices to submit identical prototypes of all such devices for the Commission's approval before they are sold, leased, or otherwise furnished to any person in the state or used in the conduct of bingo for public play. *See*

---

[1]*See* Letter from C. Tom Clowe, Jr., Chair, Texas Lottery Commission, to Honorable John Cornyn, Texas Attorney General (May 17, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

Request Letter, *supra* note 1, at 3; *see also* 16 TEX. ADMIN. CODE § 402.555(b)(1)(2) (2001). If the Commission detects or discovers any problem with the card-minding device that "affects the security and/or integrity of the bingo game or card-minding device," it may direct the manufacturer to cease the sale, lease, or use of the device. *See* 16 TEX. ADMIN. CODE § 402.555(b)(5).

A licensed manufacturer of a bingo card-minding device has submitted for the Commission's approval a device called the "Diamond Too." The "Diamond Too" contains software designed to be installed in a bingo card-minding device that will allow a bingo player, for an additional fee, to access various software games, including video poker games. *See* Request Letter, *supra* note 1, at 2. You describe these video poker games as follows:

> The video poker games use a video playing screen that displays five dealt cards, any of which can be held for a second deal. The[y] . . . allow a bet ranging from one credit to the maximum credit of five. These credits are referred to as "coins" on the winning hand chart at the top of the play screen. The chart displays the winning amount of the hand, flush, strait [sic], three of a kind, etc. based on how many coins [are] bet. When playing the video poker games, the screen shows a starting credit amount of five hundred coins and offers two versions of poker, 'Jacks or Better' and 'Deuces Wild'. In connection with the video poker games, credits can be accumulated. It is not known whether either video poker game allows for the adjustment of winnings.

> The device housing the electronic bingo card-minding device and the additional games, including the video poker game, does not have a port allowing for the insertion of money or tokens or for dispensing tickets, gift certificates, or tokens.

*Id.*

You specifically ask:

> (1) Does the [Commission's] statutory responsibility to regulate bingo extend to the allowance or disallowance of the installation of additional software on an electronic card-minding device, such as the installation of a video poker game, when such software is not related to the game of bingo?

> (2) Is the proposed video poker game included as part of the additional software on the electronic card-minding device, a device that is included in the definition of a "gambling device" within the meaning of the Texas Penal Code and/or the [Bingo Enabling Act] and is not otherwise subject to the "amusement

> device exception"? If so, then what effect does this determination have on the authority of the Charitable Bingo Operations Division to regulate bingo?
>
> (3) Notwithstanding the provisions of the Texas Penal Code and/or [the Act] regarding gambling devices or video lottery machines, does the proposed video game included as part of the additional software on the electronic bingo card-minding device, constitute another 'game of chance' and therefore come within the prohibition found in . . . section 2001.416 [of the Act]?

*Id.* at 7-8.

We begin our analysis by briefly reviewing the provisions of the Bingo Enabling Act, TEX. OCC. CODE ANN. §§ 2001.101-.657 (Vernon 2002) ("Act"). The Act closely regulates the bingo industry. Only persons licensed by the Commission under the Act may conduct bingo games. *See id.* §§ 2001.101 (authorized organizations), .551 (offense). Only a licensed commercial lessor may lease premises on which bingo is conducted. *See id.* § 2001.151. And only a licensed manufacturer may sell or supply for use in this state bingo supplies or equipment designed to be used in playing bingo, or engage in any intrastate activity involving those items. *See id.* § 2001.201. A bingo card-minding device is "bingo equipment." *See id.* § 2001.002(5)(A)(ii). Only a licensed authorized organization or a person authorized to conduct bingo may lease or purchase an electronic or mechanical card-minding device for use in the conduct of bingo. *See id.* § 2001.407. Such a device may not be used to generate or determine letters, numbers, or other symbols used in playing the bingo card played with the device's assistance; as a receptacle for the deposit of tokens or money to play the bingo card; or as a dispenser for the bingo prize for the bingo card. *See id.* § 2001.409(a), (b). You do not contend that the bingo card-minding device with the additional video poker software contravenes these restrictions.

Section 2001.416(a) of the Act provides that "[a] game of chance other than bingo or a raffle . . . may not be conducted or allowed during a bingo occasion." *Id.* § 2001.416(a). Subsection 2001.416(d) creates an exception to this broad prohibition by providing that "[t]his section does not prohibit the exhibition and play of an *amusement machine that is not a gambling device* as defined by Section 47.01, Penal Code." *Id.* § 2001.416(d) (emphasis added). Subsections (a) and (d) read together prohibit all "games of chance," except (i) bingo, (ii) raffle, and (iii) "an amusement machine *that is not* a gambling device" during a "bingo occasion." *See id.* § 2001.416 (a), (d) (emphasis added); *see also* HOUSE COMM. REPORT, BILL ANALYSIS, Tex. H.B. 3021, 74th Leg., R.S. (1995) (adopting substance of subsection (d)) ("Clarifies that an amusement machine that is not a gambling device is not prohibited from [the] premises."); FISCAL NOTE, Tex. H.B. 3021, 74th Leg., R.S. (1995) ("The bill allows the operation of coin operated amusement machines during bingo."). Thus, they prohibit a machine or device *that is* a gambling device under the Penal Code. A "bingo occasion" is "all activities incident to the conduct of a series of bingo games by a licensed authorized organization, including the organization's licensed times and any preparatory or concluding activities incident to the conduct of bingo." TEX. OCC. CODE ANN. § 2001.002(6) (Vernon 2002). It begins

when "the premises are opened to the public." *Id.* § 2001.419(a). In short, the Act prohibits all games of chance (other than bingo and raffle) and gambling devices during a bingo occasion.

Finally, the Act grants the Commission broad regulatory authority. It provides that the Commission "shall administer . . . chapter [2001]," and "has broad authority and shall exercise strict control and close supervision over all bingo conducted in this state so that bingo is fairly conducted and the proceeds derived from bingo are used for an authorized purpose." *Id.* § 2001.051(a), (b). (The Act further directs that the Commission execute its "authority through a bingo division established by the commission to administer . . . chapter [2001]." *Id.* § 2001.051(c).) It also authorizes the Commission to adopt rules to enforce and administer the Act. *See id.* § 2001.054.

With this overview of the Act, we turn to your principal question: whether the Commission's statutory authority to regulate bingo extends to the allowance or disallowance of the installation of additional software on an electronic bingo card-minding device that allows a player to play additional games, such as video poker, during a bingo occasion. We conclude that it does. As an administrative agency, the Commission may exercise only the specific powers expressly conferred upon it by the Act and those powers necessarily implied from the statutory authority granted or the duties expressly given or imposed. *See Ford Motor Co. v. Motor Vehicle Bd.*, 21 S.W.3d 744, 764 (Tex. App.–Austin 2000, pet. denied). The Act here grants the Commission broad, express authority to administer and enforce the provisions of the Act and it expressly prohibits any "game of chance" or a "gambling device" during a bingo occasion. A bingo card-minding device containing the additional software is designed to be used during a bingo occasion. In order to implement the Act's prohibition, we believe the Commission is necessarily required to examine the additional software on an electronic bingo card-minding device, and disapprove its installation if it allows a player to play a "game of chance" or use a "gambling device" during a bingo occasion. *See* 16 TEX. ADMIN. CODE § 402.555(b)(5) (2001) (providing that if Commission detects or discovers any problem with card-minding device that "affects the security and/or integrity of the bingo game or card-minding device," it may direct manufacturer to cease sale, lease, or use of device).

You also ask whether the video poker game included as a part of the additional software on the bingo card-minding device is a prohibited "game of chance" that the Commission must disallow. We conclude that the video poker game described to us is a "game of chance."

While the legislature has used the phrase "game of chance" several times in the Act, it has not defined the phrase in the Act or elsewhere.[2] (Similarly, while Texas courts have used the phrase

---

[2]Section 2001.002(4) provides that "'[b]ingo' means . . . a specific *game of chance*, commonly known as bingo or lotto, in which prizes are awarded on the basis of designated numbers or symbols conforming to randomly selected numbers or symbols." TEX. OCC. CODE ANN. § 2001.001(4) (Vernon 2002) (emphasis added). Again, section 2001.416(a) states that "[a] *game of chance* other than bingo or a raffle . . . may not be conducted or allowed during a bingo occasion[,]" *id.* § 2001.416(a), and section 2001.416(d) provides that the section does not prohibit the exhibition and play of an amusement machine that is *not a gambling device* as defined by Section 47.01, Penal Code." *Id.* § 2001.416(a), (d) (emphasis added). And, section 2001.551(a) provides that "'bingo' or 'game' means a specific *game of chance*, commonly known as bingo or lotto, in which prizes are awarded." *Id.* § 2001.551(a) (emphasis added).

repeatedly, none has defined it.[3]) When the legislature has not defined a statutory term or phrase, we give it its ordinary or common meaning. *See Monsanto v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993); *see also* TEX. GOV'T CODE ANN. § 311.011 (Vernon 1998) (words and phrases to be construed in context and in accordance with common usage unless they have acquired technical or particular meaning). *Webster's Dictionary* defines "game of chance" as: "a game (as a dice game) in which chance rather than skill determines the outcome." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 504 (1983). Similarly, *Black's Law Dictionary* defines the phrase as "[a] game whose outcome is determined by luck rather than skill. Cf. GAMBLING DEVICE." BLACK'S LAW DICTIONARY 687 (7th ed. 1999). *Accord State v. Gambling Device*, 859 S.W.2d 519, 523 (Tex. App.–Houston [1st Dist.] 1993, writ denied) (contrivance designed to incorporate element of chance to influence award is contrivance whose outcome is determined by chance); *Poppen v. Walker*, 520 N.W.2d 238, 245 (S.D. 1994) (and cases cited therein) (game of chance is one in which success or failure depend less on skill and experience than on purely fortuitous circumstances incidental to game, manner of playing it, or device or apparatus with which it is played; test is whether chance is determining element in outcome of game). Thus, the commonly understood meaning of a "game of chance" is a game whose outcome is determined by chance rather than skill. Nothing in this definition of the phrase requires the element of "prize."

The video poker game's outcome is determined by chance. You inform us that the video poker game "has the same element of chance" as traditional poker games: "The outcome of any one hand is a mixture of skill and chance in that the skillful player will know which cards to keep and which to discard." Request Letter, *supra* note 1, at 7.[4] It need not award a thing of value as a "prize" to constitute a "game of chance," as that phrase is commonly understood. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 504 (1983); BLACK'S LAW DICTIONARY 687 (7th ed. 1999). *Cf. Games Mgmt., Inc. v. Owens*, 662 P.2d 260 (Kan. 1983) (video games of "Double-Up" and "Twenty-One," variations of poker game known as blackjack, because dominated by chance are games of chance, and are "gambling devices" when something of value is received as prize).

---

[3]In a 1931 case, the court of criminal appeals noted that, "without approving [the definition] in its entirety" "game of chance is defined in 27 Corpus Juri, at page 968 as follows: 'It is a game determined entirely or in part by lot or mere luck, and in which judgment, practice, skill or adroitness have honestly no office at all, or are thwarted by chance; a game in which hazard entirely predominates.'" *Boatwright v. State*, 38 S.W.2d 87, 88 (Tex. Crim. App. 1931).

[4]But as one court has noted "the fundamental nature of such [video card] games is chance—a player's skill, no matter how good or bad, does not and cannot control the randomness inherent in the 'deal' of the card. Stated another way, the skill of the player may increase the player's odds of winning but ultimately the player's skill cannot determine the outcome, regardless of the degree of skill involved." *Opinion of the Justices No. 373*, 2001 WL 431692 *12 (Ala. 2001). Courts in other jurisdictions have determined that video poker and similar video card games are games dominated by chance. *See, e.g., Score Family Fun Ctr., Inc. v. County of San Diego*, 225 Cal. App.3d 1217 (1990) (Mini-Boy 7, offering video games of blackjack, poker, hi-lo, double-up, and craps, predominantly games of chance); *Games Mgmt., Inc. v. Owens*, 662 P.2d 260 (Kan. 1983) (small amount of skill required to play video card games of "Double-Up" and "Twenty-One," a variation of poker game known as blackjack, was overshadowed by pure chance; "Double-Up" and "Twenty-One" are games of chance); *H & Z Vending v. Iowa Dep't of Inspections & Appeals*, 593 N.W.2d 168 (Iowa Ct. App. 1999) (video poker game of "fraternal poker" was game of chance); *Garono v. State*, 524 N.E.2d 496 (Ohio 1988) (video poker game machines are games of chance).

Finally, you ask whether the video poker game included as a part of the additional software on the bingo card-minding device is also a prohibited "gambling device." Given the factual nature of the inquiry, we cannot provide a definite answer. However, we provide the legal criterion for determining whether the particular game is a gambling device.

The Act does not define "gambling device," but refers to the definition of that phrase in section 47.01 of the Penal Code. Subsection (4) of that statute provides that:

> (4) Gambling device means any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a *consideration* affords the player an *opportunity to obtain anything of value*, the award of which is determined *solely or partially by chance*, even though accompanied by some skill, *whether or not the prize is automatically paid by the contrivance*. The term:
>
> > (A) *includes, but is not limited to,* gambling device versions of bingo, keno, blackjack, lottery, roulette, *video poker*, or similar electronic . . . games, or facsimiles thereof, that *operate by chance or partially so*, that as a result of the play or operation of the game *award credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits*; and
> >
> > (B) does not include any electronic . . . contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

TEX. PEN. CODE ANN. § 47.01(4) (Vernon Supp. 2002) (emphasis added).

Two additional definitions are also relevant. First, under section 47.01(9) of the Penal Code, "thing of value" is "any *benefit* [exclusive of] an unrecorded and immediate right of replay not exchangeable for value." *Id.* § 47.01(9) (emphasis added). The term "benefit" under section 1.07(a)(7) of the Penal Code is "anything reasonably regarded as economic gain or advantage, including benefit to any other person in whose welfare the beneficiary is interested." *Id.* § 1.07(a)(7) (Vernon 1994). "Benefit," Texas courts have said, includes anything to which a price can be assigned. *See Smith v. State*, 959 S.W.2d 1, 20-21 (Tex. App.–Waco 1997, pet. ref'd); *Allstar Amusement v. State*, 50 S.W.3d 705, 708 (Tex. App.–Waco 2001, no pet.).

Under Texas case law, "amusement" is a thing of value. *See Hoffman v. State*, 219 S.W.2d 539, 541 (Tex. Civ. App.–Dallas 1949, no writ) (and cases cited) ("Texas courts further hold that amusement is a 'thing of value' and that free games won on marble machines at least are within condemnation of the statutes."). The statutory definition of "thing of value" excluding "an unrecorded and immediate right of replay" was designed to exclude amusement-type pinball machines. *See Gambling Device*, 859 S.W.2d at 524 (by excepting award of immediate right of replay from definition "thing of value," legislature excluded ordinary amusement-type pinball machines from prohibition of chapter; clear implication is that such devices incorporating essential elements of chance and skill would otherwise be prohibited); *see also State v. Mendel*, 871 S.W.2d 906, 909 (Tex. App.–Houston [14th Dist.] 1994, no writ).

In sum, the essential elements of a "gambling device" under section 47.01 of the Penal Code are: (1) payment of consideration for the operation of the device; and (2) the award of a "thing of value" by the device that is "determined by chance." *See* TEX. PEN. CODE ANN. § 47.01(4) (Vernon Supp. 2002); *see also Mendel*, 871 S.W.2d at 909; *State v. Fry*, 867 S.W.2d 398, 402 (Tex. App.–Houston [14th Dist.] 1993, no writ). "Thing of value" includes any benefit other than "an unrecorded and immediate right of replay not exchangeable for value." *See* TEX. PEN. CODE ANN. § 47.01(9) (Vernon Supp. 2002). "Benefit" includes anything to which a price can be assigned. *See id.* § 1.07(a)(7) (Vernon 1994); *Smith*, 959 S.W.2d at 20-21; *Allstar Amusement*, 50 S.W.3d at 708. "Gambling device" expressly includes a "video poker" game device that operates wholly or partially by chance and awards either credits or free games, the award and cancellation or removal of which credits or games are recorded. *See id.* § 47.01(4)(A) (Vernon Supp. 2002). The phrase expressly excludes an amusement device that awards noncash merchandise prizes, toys, or novelties or representations redeemable for those items with value of $5 or less. *See id.* § 47.01(4)(B); *see also State v. One Super Cherry Master Video 8-Liner Mach.*, 55 S.W.3d 51, 52 (Tex. App.–Austin 2001, pet. filed) (section 47.01(4)(B) essential part of definition of "gambling device").

Application of the definition "gambling device" depends on the physical characteristics of the particular device in question. *See Mendel*, 871 S.W.2d at 909; *Fry*, 867 S.W.2d at 402. Because this office does not make finding of facts in the opinion process,[5] we are limited to the information provided to us regarding the physical characteristics of the video poker game in applying the definition of a gambling device. Based on the information provided, we conclude that the video poker game described to us is a gambling device only if it records the "cancellation or removal of credits" awarded; and the credits awarded provide a benefit to which a price can be assigned other than an immediate right to replay. As the agency charged with the application and enforcement of the provisions of the Act, the Commission must determine, in the first instance, whether the video poker game is a gambling device.

Clearly, the described video poker game meets the first essential element of the statutory definition because access to or operation of the game requires the payment of an additional use or

---

[5]*See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0020 (1999) at 2 (stating that investigation and resolution of fact questions cannot be done in opinion process); M-187 (1968) at 3 ("[T]his office is without authority to make . . . factual determinations.").

rental fee. *See* Request Letter, *supra* note 1, at 2. ("In addition to the fee paid to use the electronic bingo card-minding device, for an extra fee, known as 'supersizing', additional software can be activated to provide games to the bingo player."). However, we have insufficient information to determine whether it meets the second essential element of the statutory definition—the award of a thing of value—by chance. Again, a "gambling device" expressly includes a "video poker" game device that operates wholly or partially by chance "that as a result of the play or operation of the game award[s] *credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits*." *See* TEX. PEN. CODE ANN. § 47.01(4)(A) (Vernon Supp. 2002) (emphasis added). Thus, we read "thing of value" to include credits or free games, the award and cancellation or removal of which credits or games are recorded. *See id.* § 47.01(9) ("Thing of value" includes any benefit other than an "unrecorded and immediate right of replay not exchangeable for value."). The video poker game, as described, awards and records "credits"; the credits are accumulated. *See* Request Letter, *supra* note 1, at 2 (screen displays credits and bets; credits can be accumulated). The award of the credits is determined at least partially by chance. *See supra* discussion at p. 5; *Gambling Device*, 859 S.W.2d at 523 ("We interpret the statute to apply to contrivances that incorporate any element of chance, even if the exercise of skill also influences the outcome. Even a contrivance that is predominantly a game of skill may be determined by chance."). And, presumably the loss or reduction of the credits is also recorded as the game progresses, although you do not tell us whether that is the case. But we do not know the purpose of the accumulated credits and whether they provide a "benefit" other than an immediate right to replay. *See* TEX. PEN. CODE ANN. § 47.01(9) (Vernon Supp. 2002) (definition of "thing of value" excluding an "immediate right to replay"); *Allstar Amusement*, 50 S.W.3d at 708 (because 8-liner clearly recorded credits, and tickets dispensed by machine for those credits could be exchanged for play on another machine that was not necessarily "immediate," only remaining question was whether tickets were a "benefit").

We do not believe the described video poker game is excluded, as a matter of law, from the definition of "gambling device" under the express "bona fide amusement" device exception under section 47.01(4)(B). *See* TEX. PEN. CODE ANN. § 47.01(4)(A) (Vernon Supp. 2002). It obviously does not award noncash merchandise items or representations of value redeemable for such items similar, for example, to machines at amusement parks. *See id.*; *One Super Cherry Master Video 8-Liner Mach.*, 55 S.W.3d at 52 ("'[N]oncash merchandise prizes' implies its ordinary meaning—merchandise prizes as opposed to a prize consisting of currency or coin that the recipient was free to take from the premises if he wished."); Debate on Tex. S.B. 15 on the Floor of the Senate, 74th Leg., R.S. (April 4, 1995) (statements of Senator Whitmire explaining that intent of language was to allow practice of awarding tickets that allow purchase of "teddy bears" or other gifts of $5.00 or less at amusement parks, such as AstroWorld and Six Flags Over Texas, and other "similar practices") (audio tape available from Senate Staff Services Office).

Our ultimate conclusion that the Commission is authorized to disapprove as a "game of chance" components or features of an electronic bingo card-minding device that allow a player to play the described video poker game during bingo occasions is supported by the Act's legislative history. House Bill 302 authorized the use of bingo card-minding devices. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 1057, § 2, 1995 Tex. Gen. Laws 5222. The following exchange

regarding the use of these devices took place between Representative Chisum and the bill's author, Representative Kuempel:

> **Rep. Chisum**: Are you aware . . . that these kinda machines that you are now authorizing in the statute are the same kinda machines that could be modified to do *video poker*, blackjack, or even keno?
>
> **Rep. Kuempel**: Yes. That's why specifically, on page 4 line 7 of the bill [it states that the device may not be used] to generate [or] determine random letters, numbers or other symbols used in playing bingo card played with the device's assistance. We are definitely not going to . . . have keeno or blackjack or something like that on these machines.
>
> **Rep. Chisum**: So, if it is your intention that this only be used for some kind of machine-played bingo and would it be in the bingo parlors?
>
> **Rep. Kuempel**: Yes.

Debate on Tex. H.B. 3021 on the Floor of the House, 74th Leg., R.S. (May 26, 1995) (emphasis added) (audio tape available from House Video/Audio Services Office). The legislature did not intend that bingo card-minding devices be used to play video poker or other similar games during bingo occasions.

## S U M M A R Y

The Texas Lottery Commission is required to examine the secondary components or features of an electronic bingo card-minding device unrelated to the game of bingo and disapprove them if they allow a player to play a "game of chance" or use a "gambling device" during a bingo occasion. The video poker game, as described, is a prohibited "game of chance." It is likewise a prohibited "gambling device" if it records the "cancellation or removal of credits" awarded; and the credits awarded provide a benefit to which a price can be assigned other than an immediate right to replay. The Commission must determine, in the first instance, whether the video poker game is a gambling device.

Yours very truly,

JOHN CORNYN
Attorney General of Texas


HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee