**Mark CLARK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 077–83.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 15, 1984.

---

George M. Karam, Houston, for appellant.

John B. Holems, Jr., Dist. Atty. and Winston E. Cochran, Jr., Russell Turbeville and Harvey Hudson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

Appeal is taken from convictions in two cases in which the appellant was charged with violating the Polygraph Examiners Act, Tex.Rev.Civ.Stat.Ann. Art. 4413(29cc).[1] After finding the appellant guilty, the court assessed a fine of $100.00 in each case, probated for six months. The Houston Court of Appeals (1st District) affirmed the convictions in an unpublished opinion. We granted appellant's petition for discretionary review in order to review the Court of Appeals' holdings that the evidence is sufficient to sustain the convictions, and that Art. 4413(29cc) is constitutional.

Appellant was charged by two informations, which alleged that he did unlawfully:

"intentionally and knowingly administer an examination to Sheldon Philip Reichstein utilizing instrumentation for the purpose of detecting deception and verifying truth of statements without first securing a license from the Polygraph Examiners Board, as required by Article 4413 (29cc) of Vernon's Annotated Texas Statutes.

and:

"intentionally and knowingly use an instrument and device known as a psychological stress evaluator to detect deception in statements made by Sheldon Philip Reichstein, and such psychological stress evaluator did not record visually, permanently, and simultaneously: (1) the cardiovascular pattern of Sheldon Philip Reichstein, and (2) the respiratory pattern of Sheldon Philip Reichstein."

In essence, Sec. 4 of Art. 4413(29cc), supra, hereinafter referred to as "the act," prohibits the use of any "instrument" to "detect deception" or "verify truth" that does not meet the "minimum instrumentation requirements" of a polygraph machine.[2] Sec. 7 of the Act prohibits, inter

---

1. The applicable portions of Art. 4413(29cc) provide as follows:

   "Sec. 4. Any instrument used to test or question individuals for the purpose of detecting deception or verifying truth of statements shall record visually, permanently, and simultaneously: (1) a subject's cardiovascular pattern and (2) a subject's respiratory pattern. Patterns of other physiological changes in addition to (1) and (2) may also be recorded. The use of any instrument or device to detect deception or to verify truth of statements which does not meet these minimum instrumentation requirements is hereby prohibited and the operation or use of such equipment shall be subject to penalties and may be enjoined in the manner hereinafter provided.
   " . . .
   "Sec. 7. It shall be unlawful for any person, including a city, county or state employee, to administer polygraph or other examinations utilizing instrumentation for the purpose of detecting deception or verifying truth of statements or to attempt to hold himself out as a polygraph examiner or to refer to himself by any other title which would indicate or which is intended to indicate or calcu-

   lated to mislead members of the public into believing that he is qualified to apply instrumentation to detect deception or to verify truth of statements without first securing a license as herein provided.
   " . . .
   "Sec. 26. Any person who violates any provision of this Act or any person who falsely states or represents that he has been or is a polygraph examiner or trainee or that he is qualified to apply instrumentation to the detection of deception or verification of truth of statements shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than $100 nor more than $1,000 or by imprisonment in the county jail for a term of not to exceed six months, or both.

2. Although the Act does not specifically state that the polygraph is the only "instrument" allowed, it does require that the "instrument" used record at a minimum "visually, permanently, and simultaneously" a subject's cardiovascular and respiratory patterns. These features are the essential components of the "lie detector" machine commonly known as the "po-

alia, administering an examination utilizing an "instrument" to detect deception or verify truth without first securing a license under the Act. See note 1, supra. Appellant was charged with violating these provisions by administering an examination without a license, and by using a Psychological Stress Evaluator (PSE), a voice analysis machine which does not meet the "minimum instrumentation requirements" of a polygraph.

The State's evidence at the guilt stage consisted of the testimony of William Fisher, board member and former chairman of the State Board of Polygraph Examiners, and a stipulation of evidence which contained an affidavit by the complainant, Sheldon Philip Reichstein. Reichstein's affidavit revealed that he was suspected of theft by his employer, Whataburger restaurant, who requested that he undergo a "stress test" in order to keep his job. Reichstein agreed, and in January 1980, met with appellant at the employer's office in order to take the test. Appellant asked Reichstein several questions, and appellant recorded the responses. Reichstein stated that a tape recorder and microphone were on the table during the interview. Reichstein was required to meet again with appellant by his employer at a later date. At this second meeting, appellant informed Reichstein that if he paid $200.00 in restitution he would not have to take another test. Reichstein refused to pay and took another test, after which the following took place, according to his statement:

"After I had taken the tests he showed me how he could tell deciption (sic). After that he called in his partner and he asked him to read the tapes to (sic) so he would have another persons (sic) decision.... They started showing me how they read the tapes and showed on certain parts where I wasn't telling the truth ..."

After failing the examination, Reichstein was not rehired.

lygraph." See Imwinkelried, *Scientific and Expert Evidence 2d ed.,* (P.L.I.1981), ch. 26.

Fisher testified that appellant was not a licensed polygraph operator, and that the test appellant administered to the complainant could not have been a polygraph examination. He described a Psychological Stress Evaluator as a machine which tests a person's veracity by analyzing recordings of a person's responses to questions. He further testified that "Psychological Stress Evaluator," or PSE, was a brand name for a product made by the "Dektor" company, and that the PSE does not record visually, permanently, and simultaneously, a subject's cardiovascular and respiratory patterns.

Appellant contends that Secs. 4 and 7 of the Act violate due process and equal protection by arbitrarily discriminating against those who use devices other than the polygraph for the purpose of detecting deception or verifying truth. Appellant also challenges the constitutionality of the Act on the basis of vagueness and overbreadth.

The Act divides the profession of truth and deception detection into two groups: Those who purport to verify truth and detect deception through the use of polygraph machines, and those who use other machines for the same purpose. Only the former group may be licensed under the Act; thus only polygraph operators may engage in the truth and deception detection business. Appellant contends that this classification is unreasonable and arbitrary and is not rationally related to the objective of the Act, which is stated to be "to regulate all persons who purport to be able to detect deception or to verify truth of statements ...", see Sec. 2 of the Act.

It is well settled that the Equal Protection Clause allows the Legislature considerable leeway to enact legislation that may appear to affect similarly situated people differently. *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982). Absent an interference with the exercise of a "fundamental" right[3] or a burden on a "suspect" class,[4]

3. "Fundamental" rights include the right to privacy, the right to vote, rights guaranteed by the First Amendment, the right to procreate, and

4. See note 4 on page 481.

classifications will not be set aside on equal protection grounds if they are rationally related to a legitimate state interest. Id. Alternatively stated, the test "is whether the challenged classification rests on grounds wholly irrelevant to achievement of a valid state objective." *Morgan v. State*, 470 S.W.2d 877, 880 (Tex.Cr.App. 1971). See also *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

■ Appellant does not contend that he is a member of a "suspect" class or that the right to practice his profession is a "fundamental" right. Therefore, we will scrutinize the Act only to determine whether the classification scheme it sets up is rationally related to the achievement of a legitimate state interest. There is no question that the State has a legitimate interest in regulating those who purport to be able to detect deception or to verify truth of statements through the use of mechanical devices. It is common knowledge that polygraph and other "lie detector" tests are used by employers as well as by police. As the instant case indicates, failing such a test can cause serious consequences. It is evident from the educational, moral, and mechanical prerequisites for licensing under the Act that the Legislature sought to protect the public by creating certain minimum requirements for "lie detector" operators and machines. We find that the classification scheme is rationally related to that objective. The wisdom of the Legislature's determination that the polygraph is more accurate and reliable than other "lie detec-

tors" is not subject to judicial review, under the rational basis standard. See *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Morgan v. State*, supra.

■ Appellant contends that the Act's purposes cannot be furthered by the classification since under the Act, a licensed polygraph examiner can lawfully operate machines other than a polygraph and base his decision solely on the results of the nonpolygraph examination. We do not interpret the statute in the same manner. Sec. 4 of the Act, supra note 1, provides that "The use of any instrument or device to detect deception or to verify truth of statements which does not meet [the] minimum instrumentation requirements [of the polygraph] is hereby prohibited ..." It further provides, however, that "Patterns of other physiological changes in addition ..." to those recorded by the polygraph "may also be recorded." See note 1, supra. While this language does allow the use of a machine other than a polygraph at the same time that a polygraph examination is being administered, it would be impermissible to rely on the non-polygraph examination results alone "to detect deception or to verify truth of statements." Thus although another test can be lawfully administered by a licensed polygraph examiner along with the polygraph examination, the results of the non-polygraph can only be used as a supplement to the polygraph test results, which must be used in formulating any conclusions about the veracity of a subject's statements.[5]

the right to interstate travel. See *Massachusetts Board of Retirement v. Murgia*, 96 S.Ct. 2562, note 3, and the cases cited therein.

**4.** "Suspect" classifications are those based on alienage, race, and ancestry. See *Murgia*, supra, at note 4.

**5.** In *Illinois Polygraph Society v. Pellicano*, 414 N.E.2d 458, 46 Ill.Dec. 574, 83 Ill.2d 130 (1980), a similar statute was challenged on the same basis. Ill.Rev.Stat.1979, ch. 111, par. 2403, Sec. 3 provided:
"Every examiner shall use an instrument which records permanently and simultaneously the subject's cardiovascular and respi-

ratory patterns as minimum standards, but such an instrument may record additional physiological changes pertinent to the detection of deception."
A lower court held that the statute created classifications not reasonably related to the protection of the public health, safety, or welfare since it allowed a licensed polygraph operator to use and rely on non-polygraph examinations. The Illinois Supreme Court rejected this contention:
"We are constrained to disagree with the conclusion of the appellate court since it assumes that while an examiner must use an instrument which records cardiovascular and respiratory patterns as minimum standards, an examiner is free to ignore the results which

Appellant also challenges the Act as being unconstitutionally vague and overbroad. Due process requires that criminal statutes be reasonably definite as to the persons and the conduct within their scope and the punishment which may be imposed for their violation. See LaFave and Scott, Criminal Law Sec. 11 (1972). Penal statutes must be drafted so that ordinary people can understand what conduct is prohibited, and in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

A statute is considered impermissibly overbroad if, in addition to proscribing activities which may constitutionally be forbidden, it sweeps within its coverage speech or conduct which is protected by the First Amendment. See *Dandridge v. Williams,* supra; *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

In analyzing a facial challenge to the overbreadth and vagueness of a law, the Supreme Court has stated that:

"A court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law." *Hoffman Estates v. Flipside, Hoffman Estates,* 455

U.S. 489, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).

Addressing appellant's overbreadth challenge first, we fail to see how the Act reaches a substantial amount of conduct protected by the First Amendment. Only two sections of the Act, Secs. 7 and 26, see note 1 supra, place restrictions on speech. Sec. 7 makes it unlawful for a person "to attempt to hold himself out as a polygraph examiner or to refer to himself by any other title which would indicate or which is intended to indicate or calculated to mislead members of the public into believing that he is qualified to apply instrumentation to detect deception or to verify truth of statements without first securing a license as herein provided." Sec. 26 of the Act provides that "any person who falsely states or represents that he has been or is a polygraph examiner or trainee or that he is qualified to apply instrumentation to the detection of deception or verification of truth of statements shall be guilty of a misdemeanor ..." We interpret these sections to prohibit only an intentionally false statement or representation by a person that he is licensed under the Act to apply polygraph or other devices to detect deception or to verify truth of statements, made for the purpose of securing business, when in fact the person making the statement or representation is not licensed under the Act.

Under this interpretation, we note that since the Act only regulates commercial speech, the doctrine of overbreadth is inapplicable. See *Hoffman Estates v. Flipside, Hoffman Estates,* supra. Furthermore, intentionally false or misleading statements made in a commercial context are not within the protection of the First Amendment. See *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). We find no other por-

that instrument yields. We must presume that the statute is rational, and any construction which would bring about an illogical result must be discarded ...

"Therefore, we think the statute means that an examiner must use an instrument which records cardiovascular and respiratory pat-

terns and must also use the results from the test in formulating any analysis. It would be incongruous to require that a certain instrument be used in an examination but to permit the results from that examination to be ignored." 414 N.E.2d at 462, 46 Ill.Dec. at 578.

tions of the Act which implicate speech in any manner. Appellant's contention that the Act is unconstitutionally overbroad is overruled.

■ Turning to appellant's vagueness challenge, since no First Amendment rights are involved, we need only scrutinize the Act to determine whether it is impermissibly vague as applied to appellant's conduct. *Hoffman Estates*, supra; see also *United States v. Powell*, 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). As stated above, the sections of the Act that appellant was charged with having violated provide as follows: Sec. 4, see supra note 1, prohibits the use of any "instrument" to detect deception or to verify truth that does not meet the minimum instrumentation requirements of a polygraph machine, unless such non-polygraph machine is used in conjunction with a polygraph. Furthermore, the examiner may not rely on non-polygraph test results alone in making an analysis about the subject's veracity. Sec. 7, see supra note 1, prohibits administering an examination with an "instrument" to detect deception or to verify truth without first securing a license under the Act.

■ While the term "instrument" in Secs. 4 and 7, supra, is not expressly defined in the Act, Sec. 2 of the Act sufficiently limits its scope:

"It is the purpose of this Act to regulate all persons who purport to be able to detect deception or to verify truth of statements *through the use of instrumentation (as lie detectors, polygraphs, deceptographs, and/or similar or related devices and instruments* without regard to the nomenclature applied thereto) ...." (Emphasis supplied.)

In this context, we interpret the "instruments" covered by the Act to be limited to machines which record graphically, or otherwise display visually, a subject's speech, behavior, or physiology, so that the graph or other visual display can be analyzed to determine whether or not the subject is telling the truth. Under this interpretation, we find that the Act is not impermissibly vague. Appellant's contention is overruled.

■ Having interpreted the Act to determine what acts it prohibits, we are now able to view the evidence to see if it is sufficient to sustain appellant's convictions. In determining the sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App. 1983).

Under the first information, the State was required to prove that appellant (1) intentionally and knowingly (2) administered an examination to complainant (3) utilizing "instrumentation" (4) for the purpose of detecting deception or verifying truth (5) without a license. The testimony of Reichstein and Fisher established all of the elements clearly except the third, "utilizing instrumentation."

Under our interpretation of "instrument," supra, the State was required to show more than mere use of a microphone and tape recorder in order to convict. The State agrees with appellant that the evidence is insufficient to show this element, and argues in its brief that "an interpretation of 'instrumentation' which would include a microphone and tape recorder ... would be inconsistent with" the language of the statute.[6]

■ Reichstein's statement indicates only that appellant gave him a "stress test" in which he recorded responses to questions, "read the tapes," and then showed Reichstein "where" he was not telling the truth on the tapes. This alone is insufficient proof of appellant's use of "instrumentation" such as "lie detectors, polygraphs, deceptographs" and other similar machines as required by Art. 4413(29cc),

---

**6.** The State urges us to reverse both convictions on the basis of insufficiency of the evidence, although it argued successfully before the Court of Appeals below that the evidence was sufficient.

supra. Reichstein did not indicate how appellant "read" the tapes. There is no evidence in the record that appellant owned or had access to a machine such as a "psychological stress evaluator" or similar device. Since no rational trier of fact could have found beyond a reasonable doubt that appellant used this type of "instrument," the conviction in the first information must be reversed.

Under the second information, the State was required to prove that appellant (1) intentionally and knowingly (2) used an instrument "known as a psychological stress evaluator" (3) to detect deception in statements made by complainant (4) and that such "psychological stress evaluator" did not record visually, permanently, and simultaneously the complainant's cardiovascular and respiratory "patterns."

◼ Our disposition of the first conviction mandates a reversal of this conviction as well. Since there was insufficient evidence to show that appellant used an "instrument," the evidence is insufficient to show that appellant used an instrument "known as a psychological stress evaluator," as alleged in the second information.

◼ Furthermore, by alleging in the information that appellant used an instrument "known as a psychological stress evaluator," the State was required to prove use of that machine. It is well settled that when the State alleges unnecessary matter in an indictment or information which is descriptive of an essential element of the crime, such descriptive matter must be proven as alleged even though needlessly stated. *Franklin v. State*, 659 S.W.2d 831 (Tex.Cr.App.1983); *Weaver v. State*, 551 S.W.2d 419 (Tex.Cr.App.1977).

◼ The use of an "instrument" is an essential element of the offense; thus by unnecessarily describing the "instrument" as a "psychological stress evaluator," the State was required to prove it as such. The State's evidence showed that "psychological stress evaluator," or "PSE," is a brand name for one company's product. There is no evidence in the record that the name is used generically. Furthermore, as stated above, there is no evidence in the record that appellant owned or had access to a PSE, or that the PSE was the only instrument capable of analyzing voice patterns. Therefore, the evidence is insufficient to sustain the second conviction.

The judgment of the Court of Appeals is reversed. The judgments of the trial court in both causes are reversed and reformed to show acquittals, and the constitutional guarantee against double jeopardy precludes further prosecution of this cause. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

CLINTON and TEAGUE, JJ., concur in results.