Gladys LEAR, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 3–87–084–CR, 3–87–085–CR.

Court of Appeals of Texas, Austin.

June 8, 1988.

John Barrett, Austin, for appellant.

Barney Knight, City Atty., Mary Ann Courter, Asst. City Atty., Austin, for appellee.

Before POWERS, BRADY and CARROLL, JJ.

BRADY, Justice.

Appellant Gladys Lear was found guilty on two charges of "harboring a barking dog" under Section 3–3–9, *Code of the City of Austin,* violation of which is a class "C" misdemeanor. The provision reads: "It shall be unlawful for any person to keep or harbor any dog which makes frequent or long continued noise which is disturbing to persons of normal nervous sensibilities."

Appellant was assessed fines of $101.50 in each case. Appellant argues the code provision is unconstitutional because it is so vague and overbroad that it violates due process of law under both the Fifth Amendment to the United States Constitution and Article 1, Section 19 of the Texas Constitution. We will affirm the judgment of the trial court in both causes.

## FACTS

The sole witness to testify in the non-jury trial was James A. Conner, who, with his wife, filed both complaints against appellant. Conner lives next door to Gladys Lear and her backyard abuts the side of the Conners' house. Conner testified that on May 31, 1984, at approximately 3:30 a.m., Gladys Lear's seven dogs (five dobermans, one boxer and a big white dog of an undetermined breed) began barking. The barking awakened Conner and his wife and did not abate by the time the couple left their home at 6:00 a.m. to go to work. On July 24 of the same year, the Conners were again awakened when Lear's dogs began barking at approximately 2:30 a.m. The barking stopped at approximately 4:00 a.m. and began again at around 5:00 a.m. and did not stop by the time the Conners left to go to work at 6:00 a.m.

Conner testified he and his wife had previously moved out of the bedroom that is located on the side of their house in closest proximity to Lear's house because of previous episodes of barking by Lear's dogs. Despite this, the barking awakened the Conners on the two occasions that form the basis of the complaints now the subject of this appeal.

Conner testified he had called Lear in the past to request that she try to quiet the dogs, but Lear had been unable to stop the dogs' barking. Further testimony by Conner revealed he has no particular sensitivity to noise of any kind and seldom woke up at night until the problem with Lear's dogs began. The barking is described as almost constant, lasting for a long period of time (never less than an hour) and occurring on a repeated basis.

## DISCUSSION

In *Clark v. State*, 665 S.W.2d 476, 483 (Tex.Cr.App.1984), the Court of Criminal Appeals applied the *Hoffman Estates* test to determine when an enactment is overbroad or impermissibly vague:

> In a facial challenge to the overbreadth and vagueness of a law, a court's task is to determine whether the enactment reaches a substantial amount of constitu-

tionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law. *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 [102 S.Ct. 1186, 1192, 71 L.Ed.2d 362] (1981) (hereinafter *Hoffman Estates*).

■ Appellant does not point out, and we do not find, any constitutionally protected conduct reached by this enactment. Because the enactment prohibiting the harboring of a dog that makes frequent or long continued noise that disturbs persons of normal nervous sensibilities does not reach constitutionally protected conduct, the overbreadth challenge fails. We turn to the vagueness challenge.

■ A vagueness challenge will be upheld only if the enactment is impermissibly vague in all of its applications. *Hoffman Estates, supra; McDonald v. State*, 693 S.W.2d 660, 661 (Tex.App.1985, no pet.) (citing *Clark v. State*, 665 S.W.2d at 483). Put another way, the enactment must be incapable of a valid application.

■ Section 3-3-9 is not incapable of valid application if it satisfies the requirements invoked by the *Hoffman Estates* test. First, the challenged enactment must provide an objective standard from which one may gauge his conduct. *Briggs v. State*, 740 S.W.2d 803, 805 (Tex.Cr.App.1987). If the enactment requires a person to conform his conduct to an imprecise but comprehensible normative standard, it is not vague. Rather, there must be a complete absence of a standard of conduct to prevail on a vagueness challenge. *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91

S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971); *Briggs v. State,* 740 S.W.2d at 805 (a criminal statute must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly).

■ Second, assuming a standard has been obtained, the reviewing Court must next determine whether the statute is impermissibly vague as applied to the challenging party's specific conduct. *Hoffman Estates, supra; Clark v. State,* 665 S.W.2d at 483. A person whose conduct is clearly within the constitutional scope of a statute may not successfully challenge it for vagueness. *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974); *Briggs v. State,* 746 S.W.2d 331, 333 (Tex.App.1988, no pet.). The burden is upon the claimant to show that in its operation the statute is unconstitutional to her in her situation; that it may be unconstitutional to others is not sufficient. *Parent v. State,* 621 S.W.2d 796, 797 (Tex.Cr.App. 1981).

■ With these requirements in mind, we turn now to an examination of § 3–3–9 and its application to Lear. We note at the outset that § 3–3–9 fails to specifically define any of its terms. There is also no notice provision engrafted to inform parties when their conduct falls within the proscribed zone of conduct. A law which imposes a criminal penalty is subject to greater scrutiny by a reviewing court. *See Hoffman Estates,* 455 U.S. at 498–99, 102 S.Ct. at 1193. Nevertheless, because the provision does not reach constitutionally protected conduct and is reasonably clear in its application to the complainant, it is not constitutionally infirm.

While § 3–3–9 fails to define its terms, the terms the claimant alleges to be vague

may be rendered certain, in the sense of defining a core standard of conduct, by resort to a dictionary.[1] There one finds that "frequent" includes something that is often repeated or occurring. Webster's New International Dictionary, 1007 (2nd ed. 1953). "Long continued" means without interruption or cessation. *Id.* at 577. "Noise" encompasses undesired sound of any sort. *Id.* at 1658. "Disturbing" includes rousing from sleep. *Id.* at 757. "Normal" includes ordinary or usual. *Id.* at 1665. "Nervous" relates to the nerves. *Id.* at 1643. "Sensibilities" refers to things perceived by the senses. *Id.* at 2279.

From these terms the Court may derive a core standard of conduct intended to be proscribed by § 3–3–9. That standard *includes* the harboring of dogs that make repeated, uninterrupted and undesired sounds that rouse from sleep the person of ordinary nervous sensibilities.[2] We think this standard provides fair warning of what conduct violates § 3–3–9.

■ Applying that standard to this case, we find that Lear violated the statute. The record shows that Lear harbored seven dogs that on repeated occasions barked for long uninterrupted periods of time. This barking awakened the Conners' on numerous occasions. James Conner testified that he normally is not awakened from sleep by traffic, train or airplane noise and has no particular sensitivity to noise of any kind. We hold that the standard set forth in § 3–3–9 clearly applies to the conduct of Lear and, therefore, she may not successfully challenge its provisions as being unconstitutionally vague. *Parker v. Levy,* 417 U.S. at 756, 94 S.Ct. at 2561; *Briggs v. State,* 746 S.W.2d at 333. We overrule appellant's sole point of error.

**1.** *See Hoffman Estates,* 455 U.S. at 501, 102 S.Ct. at 1195; *Floyd v. State,* 575 S.W.2d 21, 23 (Tex. Cr.App.1978) (words not defined by statute are to be given their plain ordinary meaning and words defined in dictionaries that are so well-known as to be understood by a person of ordinary intelligence are not vague).

**2.** We point out that this standard limits its treatment of the word "disturbing" to the meaning that most aptly applies to this fact situation; that is, "to rouse from sleep" (one of several definitions of the cognate disturb). However, the standard enunciated is not to be read to mean that the only circumstance in which a dog's bark will be found "disturbing" is when it "rouses from sleep" a person of ordinary nervous sensibilities. Instead "disturbing" is to be read as being inclusive of this meaning.

The judgment of the trial court in both causes is affirmed.