# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00105-CV

**Combined Law Enforcement Associations of Texas and John Burpo, Appellants**

**v.**

**Mike Sheffield, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-12-003281, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Combined Law Enforcement Associations of Texas and John Burpo brought this interlocutory appeal of the denial of their motions to dismiss Mike Sheffield's defamation claims. Appellants contend that they triggered the dismissal procedures of the Texas Citizens Participation Act by showing that Sheffield filed his lawsuit in response to their exercise of their right of association. *See* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011. Appellants contend that Sheffield failed to respond with clear and specific evidence showing a prima facie case for each essential element of his claims as required to avoid dismissal under the TCPA. They further contend that the trial court erred by failing to award them their costs, reasonable attorney's fees, and other expenses incurred in defending this suit.

We will reverse the trial court's order denying the motion to dismiss with respect to claims based on comments made among CLEAT members and will dismiss those claims pursuant to the TCPA. We will affirm the order denying the motion to dismiss Sheffield's claim based on

comments made to the district attorney and other unnamed persons. We will remand the case for further proceedings consistent with this opinion, including consideration by the trial court of an award of costs and fees relating to the motion to dismiss.

## FACTUAL BACKGROUND

CLEAT is a labor union that represents law enforcement officers. Burpo was its executive director, and Sheffield worked for CLEAT as a field service representative, having retired from the Austin Police Department. He was assigned to help various local police associations including the Austin Police Association (APA). After disagreements relating to the scope and manner of Sheffield's interactions with APA members, Burpo fired him on July 18, 2011.

The comments giving rise to the defamation claims in this case relate to Sheffield's conduct with respect to his CLEAT-issued laptop computer in the aftermath of his firing. When he was fired, Sheffield had his CLEAT computer at home. Sheffield asserts by affidavit that the standard practice at CLEAT was to erase a departing employee's computer, reprogram it, and then give it to another employee. Sheffield states that a computer store technician saved his personal files to a thumb drive. Sheffield says he then took the computer home and deleted data from the laptop's hard drive intending to prevent disclosure of personal information. He turned in his laptop to CLEAT and says he was assured by the employee receiving it that his actions were acceptable.

Appellants assert that CLEAT's practice was always to control the computer-scrubbing process, downloading files beforehand to avoid the complete loss of data. CLEAT's expert analyzed Sheffield's computer and found some data—including some partial documents and emails—that appellants contend support their reasons for firing Sheffield. Appellants contend that

2

the data was potentially relevant in legal proceedings relating to the firing that followed—complaints and suits by both sides that have been rejected, dismissed, or withdrawn.

The parties have engaged in a series of legal wranglings. Sheffield filed unfair labor practices grievances and complaints against CLEAT with his union and the National Labor Relations Board. The union declined to pursue the grievance in arbitration, and the NLRB dismissed one complaint before Sheffield withdrew the other two. Meanwhile, Sheffield returned to work at the Austin Police Department, which prompted APD's Special Investigations Unit to investigate CLEAT's allegations that Sheffield had committed a crime by scrubbing his CLEAT computer's memory. APD found no criminal element in the conduct by Sheffield. According to APD's memo, however, its investigation was limited by CLEAT's decision not to supply APD with evidence because CLEAT wanted either Williamson County or federal authorities to investigate. APD also referred the issue to the FBI's cybercrimes unit which found "no federal [criminal] element" in Sheffield's behavior. Sheffield averred that the Lockhart Police Department (where he also worked post-CLEAT) also investigated and "likewise cleared [him]." The Williamson County grand jury in August 2012 declined to indict Sheffield. CLEAT states that in August 2012 it filed a conversion action against Sheffield in Williamson County that was transferred to Travis County and then nonsuited.

**PROCEDURAL BACKGROUND**

Sheffield's defamation suit is based on comments allegedly made by Burpo and others associated with CLEAT. The core of Sheffield's complaint in his live petition is as follows:

[O]n one or more occasions, the Defendants defamed Mr. Sheffield by uttering and/or broadcasting and/or repeating statements and false allegations that Mr. Sheffield committed criminal acts in connection with his employment with CLEAT. Those allegations included that Sheffield inappropriately accessed CLEAT's computer system and deleted files with the intention of harming CLEAT. Upon information and belief, such false accusations were broadcast to 70 plus police officers and former co-workers of Mr. Sheffield, at least. The statements were made by an officer or agent of CLEAT acting within his or her scope of authority in publishing the defamatory statement.

Appellants moved to dismiss this claim under the TCPA, a statute enacted by the Texas Legislature in 2011 to "safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."[1] Tex. Civ. Prac. & Rem. Code § 27.002. One way the statute seeks to protect those rights is by providing an early dismissal mechanism for certain categories of lawsuits. If a defendant shows by a preponderance of the evidence that the plaintiff's suit is based on, relates to, or is in response to the defendant's exercise of the rights listed in section 27.002, the TCPA requires dismissal of the suit unless the party bringing the legal action "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *See id.* §§ 27.003, .005(c). The TCPA must be "construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b). In their motions to dismiss under the TCPA, appellants asserted that Sheffield's suit was in response to a single email Burpo sent to the CLEAT board and staff. They argued that TCPA applies because

---

[1] There is nothing in the plain language of the statute that limits its scope, as Sheffield argues, to a media defendant or solely to public participation in government.

Sheffield's suit impinges on their right of association and that Sheffield could not establish a prima facie case for defamation.

In his response to appellants' motions to dismiss, Sheffield listed five communications that he alleges were made in 2012 and were defamatory:

(1) An email sent on January 4 from Burpo to the CLEAT board and staff.[2] Burpo sent the email after the NLRB set a hearing on Sheffield's complaint that he was fired for violating an overly broad limitation on work-related communications. In the email, Burpo discussed the nature and consequences of the NLRB's action. Sheffield focuses on this statement, "The Executive Board has directed me to file criminal charges against Sheffield for deleting files that were the property of CLEAT which [CLEAT attorney] Rod Tanner advises is a criminal act under Texas law."

(2) An alleged comment by Burpo to Corpus Christi Police Officers Association President Mike Staff in the summer. Staff said in an affidavit that Burpo offered him a job with CLEAT and discussed an ongoing reshuffling within CLEAT. According to Staff, Burpo told him that "he and CLEAT were still dealing with Mike Sheffield because of what Mr. Burpo told me was Mr. Sheffield's 'criminal conduct' and that he thought that would end soon."

(3) Alleged statements various CLEAT officials made to Laredo Police Association President Luis Dovalina. In his affidavit, Dovalina states that CLEAT Region 2 Director Mark Guerra "would not or could not provide an answer to why Mr. Sheffield was terminated but did state to me 'it could go criminal, for what he did.'" Although Dovalina said he asked for specifics on Sheffield's termination, he said he never received them and was not told that "a grand jury and other investigations had never led to any charges against Mr. Sheffield." Dovalina said that, when he later asked Burpo about Guerra's comments, Dovalina said that Burpo "informed me that it was 'going to court,' and that he would brief me on it at a later date" but never did. He averred that three or four CLEAT officials "stated to me that criminal charges could be filed against Sheffield by CLEAT for what Mr. Sheffield had done."

(4) Statements allegedly made by CLEAT corporate counsel John Curtis that APD chief Art Acevedo created a special employment position for Sheffield after CLEAT fired him. Sheffield asserts that this allegation (a) was false because the positions

---

[2] This is the email that appellants asserted was the sole basis of Sheffield's complaint.

were created previously and independent of his employment situation and (b) was "tantamount to an assertion of conduct violating Section 39.02 of the Texas Penal Code" governing abuse of official capacity.

(5) Statements Curtis allegedly made to Williamson County District Attorney John Bradley attempting to persuade him to allow Curtis to present information to the grand jury in pursuit of an indictment of Sheffield on grounds that he had violated Penal Code chapter 33.

The district court denied the motions to dismiss without stating a basis[3] and was not asked to make findings of fact or conclusions of law in support of its decision.

## DISCUSSION

Appellants contend that the trial court erred in denying their motions to dismiss because the TCPA applies and Sheffield failed to establish a prima facie case of defamation. They also contend that the trial court erred by failing to award them attorney's fees.

## I. Jurisdiction over this appeal

By their first issue, appellants respond to appellee's motion to dismiss this interlocutory appeal. Sheffield contends that this Court lacks jurisdiction because the TCPA does not expressly authorize an interlocutory appeal when the trial court expressly denies the motion. Sheffield contends that interlocutory appeal is authorized only when the trial court fails to rule and the motion to dismiss is overruled by operation of law under the statute. *See* Tex. Civ. Prac. & Rem. Code § 27.008. This Court has determined, however, that regardless of the meaning of the original

---

[3] Appellants also sought dismissal for want of jurisdiction and through special exceptions, but those motions are not presented in this appeal because interlocutory appeal is authorized only from the denial of the motion to dismiss under the TCPA. *See* Tex. Civ. Prac. & Rem. Code §§ 27.008, 51.014.

statute, the civil practice and remedies code as amended in 2013 confers jurisdiction over appeals such as this one. *See Kinney v. BCG Att'y Search, Inc.*, No. 03–12–00579–CV, 2013 WL 4516106 at *4 (Tex. App.—Austin Aug. 21, 2013, no pet. h.); *see also* Tex. Civ. Prac. & Rem. Code § 51.014(a)(12); Act of May 24, 2013, 83d Leg., H.B. 2935, ch. 1042, § 4. Based on the reasoning in that opinion, we sustain appellants' first issue, deny Sheffield's motion to dismiss, and proceed to consider the remaining issues raised on appeal.

## II. Applicability of the TCPA

Appellants contend in their second issue that the trial court erred if it denied the motions to dismiss on grounds that the TCPA does not apply in this case. The party seeking dismissal of a legal action under the TCPA must show by a preponderance of the evidence that the legal action is "based on, relates to, or is in response to the party's exercise of the right of free speech, the right to petition or the right of association." Tex. Civ. Prac. & Rem. Code § 27.005. "'Legal action' means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6). Appellants argue that the TCPA does apply to the disputed statements.

As an initial matter, we note that appellants cited only the right of association in their motions to dismiss, so the trial court's rejection of that theory is the only one of the three rights protected under the TCPA that is preserved here for appellate review. *See* Tex. R. App. P. 33.1; Tex. Civ. Prac. & Rem. Code § 27.005. Because interlocutory appeals are allowed only in limited situations, we strictly construe the statute permitting such appeals. *See* Tex. Civ. Prac. & Rem. Code § 51.014; *see also Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001). Although

appellants argue on appeal that their statements relating to prosecution are within the TCPA as exercises of the rights of free speech or petition, they listed those claims as their thirteenth affirmative defense but did not raise those arguments at the trial court in their motions to dismiss. Because they did not raise the free speech or petition rights as grounds for dismissal under the TCPA, the trial court did not reject them in denying the motions to dismiss, and arguments relating to those contentions are not properly within the limited scope of this interlocutory appeal. *See* Tex. R. App. P. 33.1(a)(1). Further, although the TCPA is intended to protect the exercisers of certain constitutionally protected rights from unfounded lawsuits, there is no showing that the TCPA's dismissal process is a fundamental right. We find no statutory or judicial exception permitting these arguments to be raised for the first time in this interlocutory appeal of the denial of appellants' motions to dismiss. We overrule those portions of issue two concerning arguments about the exercise of the rights of free speech and petition. For the same reason, we will not consider the merits of the remaining appellate issues with respect to the free-speech and petition theories but rather will evaluate appellants' claims under the rights asserted in their motion to dismiss, i.e. the right of association.

Appellants plainly asserted in their motion to dismiss that Sheffield's claim related to their exercise of the right of association. The TCPA defines the exercise of the right of association as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Tex. Civ. Prac. & Rem. Code § 27.001(2). Affidavits from Burpo, Staff, and Dovalina show that three of the communications (those set forth above in numbered paragraphs 1-3) that Sheffield alleges to be defamatory fall within the TCPA's definition of the exercise of the right of association. Burpo's email to the CLEAT board and staff regarding

8

Sheffield's NLRB claim as well as Burpo's and CLEAT staff's comments to two presidents of CLEAT's constituent local police associations (Corpus Christi's Staff and Laredo's Dovalina) were made between or among members of CLEAT. In the statute's terms, these were communications between individuals who joined together in CLEAT to collectively express, promote, or defend the common interests of police officers. *See id.* § 27.001(2). Sheffield's suit against CLEAT and Burpo for defamation through those statements plainly is based on, relates to, or is in response to these communications made in the exercise of the right of association, triggering Sheffield's burden to prove a prima facie case on these complaints.

Appellants did not show by a preponderance of the evidence that two other communications (those set forth above in numbered paragraphs 4-5) that Sheffield alleged were made by CLEAT's corporate attorney were within the TCPA's definition of the exercise of the right of association: (1) Curtis's allegations that APD chief Art Acevedo created a special employment position for Sheffield after CLEAT fired him, and (2) Curtis's conversation with the Williamson County district attorney when asking that he file charges. There is no allegation or evidence that Curtis made either set of these remarks to a member of CLEAT. Indeed, there is no allegation or evidence regarding to whom Curtis allegedly said that Acevedo created a job for Sheffield. There is also no allegation or evidence that then-district attorney Bradley was a CLEAT member. Appellants have not shown by a preponderance of the evidence that Curtis made these communications to an individual with whom he had joined together to collectively express, promote, pursue, or defend common interests.

We conclude that the trial court did not err by denying the motions to dismiss under the TCPA with respect to the communications described in paragraphs 4 and 5 above—i.e., Curtis's

9

communications with the district attorney or unknown persons. We overrule issue two on those claims. Because appellants did not show by a preponderance of evidence that these statements were communications made in the exercise of appellants' right of association as defined by the TCPA, the burden did not shift to Sheffield to present a prima facie case on these claims to avoid dismissal, and we need not consider the propriety of the denial of the motion to dismiss these claims any further. *See* Tex. Civ. Prac. & Rem. Code §§ 27.001(2), .005(b). With respect to the communications described in paragraphs 1, 2, and 3 above, evidence showed that these communications were made between or among CLEAT members and, thus, that the trial court erred if it dismissed based on a finding that appellants did not show that Sheffield's claims related to their exercise of the right of association. We sustain issue two with regard to the communications described in paragraphs 1, 2, and 3 above.

## III. Prima facie case

By their third issue, appellants assert that the trial court erred if it denied their motions to dismiss by concluding that Sheffield made a prima facie case on each element of his claims regarding the communications described in paragraphs 1, 2, and 3 above as required to avoid dismissal of those claims under the TCPA. To make a prima facie case of defamation, the plaintiff must prove that the defendant (1) published a statement (2) that was defamatory concerning the plaintiff (3) while acting with either actual malice or negligence regarding the truth of the statement, depending on the nature of the parties and the dispute. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). Persons who are not public figures or involved in public issues

typically need show only that the defendant knew or should have known that the defamatory statement was false. *See Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819 (Tex. 1976).

Appellants contend that Sheffield had to meet the higher intent standard because this dispute arose in the context of a labor dispute. In defamation claims arising out of labor disputes, the plaintiff must show that the defendant acted with actual malice in order to prevail in state court. The Supreme Court has held that the National Labor Relations Act preempts most state laws related to labor disputes and vests exclusive jurisdiction for related formal legal disputes in the NLRB. *See San Diego Bldg. Trades Council, Local 2020 v. Garmon*, 359 U.S. 236, 243-44 (1959) (cited in *Linn v. United Plant Card Workers of Am., Local 114*, 383 U.S. 53, 59 (1966)). The *Garmon* court excepted from that preemption those claims that are peripheral to the concerns articulated in the NLRA and that are based on interests deeply-rooted in local concerns. *Id.* The *Linn* court wrote that defamation was an issue of such deeply-rooted local interest that state courts could retain jurisdiction over defamation cases if the plaintiff showed the defendant had actual malice in making the defamatory statement. 383 U.S. at 64-65. The court opined that this approach balances the tensions among preserving expressive leeway for participants in heated labor disputes, limiting use of state-court defamation suits as a weapon in labor disputes, and allowing participants in those disputes to defend their reputations from untruthful attacks. *Id*.

While the seminal Supreme Court cases involved larger-scale labor disputes and activities like picketing (*Garmon*, 359 U.S. at 237) and union organizing (*Linn*, 383 U.S. at 55), this case, too, presents a labor dispute under the law. The NLRA defines "labor dispute" as "any controversy concerning the terms, tenure, or conditions of employment . . . regardless of whether the disputants stand in the proximate relation of employer or employee." 29 U.S.C. § 152(9). Sheffield

11

was a CLEAT employee who had his tenure ended, then disputed the terms of his employment and their role in his termination. Sheffield plainly elevated this controversy above a standard job-termination case when he invoked the NLRA regarding this dispute twice by filing unfair labor practices claims with the NLRB months after his employment was terminated. His complaints—first that CLEAT discharged him for union activities and for violating an overly broad workplace rule, and then that CLEAT retaliated against him for filing the first unfair labor practices claim—show that the circumstances of this case constitute a labor dispute as defined by the NLRA. *See id.*

For such cases, the Supreme Court adopted the standard of actual malice used in defamation cases brought by public officials against media defendants. *Linn*, 383 U.S. at 65 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)). "Actual malice" in the defamation context does not necessarily include ill will, spite, or evil motive. *Sullivan*, 376 U.S. at 279-80; *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex. 2000). To establish actual malice, a plaintiff must prove that the defendant made the statement "with knowledge that it was false or with reckless disregard of whether it was true or not." *Sullivan*, 376 U.S. at 279-80; *Huckabee*, 19 S.W.3d at 420. To establish reckless disregard, a plaintiff must prove that the publisher "entertained serious doubts as to the truth of his publication." *See St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *Huckabee*, 19 S.W.3d at 420. Plaintiffs who must show actual malice have the burden to prove that the defamatory statement was not true. *See Huckabee*, 19 S.W.3d at 420.

A timeline of the parties' legal proceedings is helpful to provide the context needed to assess whether each alleged defamatory statement was made with knowledge of its falsity or reckless disregard of its truth—i.e., whether Sheffield proved a prima facie case of defamation. Sheffield filed his unfair labor practices claim with the NLRB on October 20, 2011. On December 30, 2011,

12

the NLRB set one of his labor dispute claims for hearing in early 2012. In February 2012, APD's Special Investigation Unit found no criminal element present in Sheffield's behavior and the FBI's cybercrimes unit found no violations of federal law. Sheffield filed another NLRB complaint on March 12, 2012, but withdrew it on April 30, 2012. He withdrew his remaining NLRB complaint on July 19, 2012. The Williamson County Grand Jury declined to indict Sheffield in August 2012. We will consider each allegedly defamatory statement in the context of the speaker's knowledge at the time of the statement.

> **(1) The January 4, 2012 email** sent from Burpo to the CLEAT board and staff stating, "The Executive Board has directed me to file criminal charges against Sheffield for deleting files that were the property of CLEAT which [CLEAT attorney] Rod Tanner advises is a criminal act under Texas law."

Sheffield produced no evidence that, when Burpo sent this email, appellants either knew that any aspect of this statement was false or recklessly disregarded whether it was true. Although Sheffield clearly disagrees that his actions were criminal or warranted criminal charges, he has not alleged or established a prima facie case that Burpo was reckless with the truth of his statement about the board's direction to him or CLEAT's attorney's advice to him. There is no showing that the investigations Sheffield cites as exonerating him were complete when Burpo sent the email, or that the allegations had been presented to and rejected by the district attorney or grand jury. The only indication in the record is that the investigations and presentation to the grand jury occurred after January 4, 2012. Sheffield has not shown that Burpo made an untrue statement or had the requisite disregard for the truth of these statements when he sent the January 4, 2012 email.

13

**(2) Burpo's statement in the summer of 2012** to Corpus Christi Police Officers Association President Mike Staff that Burpo "and CLEAT were still dealing with Mike Sheffield because of what Mr. Burpo told me was Mr. Sheffield's 'criminal conduct' and that he thought that would end soon."

The potentially defamatory aspect of this statement is the use of the term "criminal conduct." APD's February investigation that found no criminal element in Sheffield's conduct does not prove that CLEAT knew this statement was false or recklessly disregarded whether it was true. Given the lack of evidence on the scope and purpose of APD's investigation and CLEAT's alleged lack of cooperation with the investigation, Sheffield has not set out a prima facie case that APD's conclusion informed appellants that their statements were false or gave them serious doubts about their truth. Appellants, supported by CLEAT's attorney's opinion, insisted at least through the August 2012 presentation to the Williamson County grand jury that Sheffield committed a crime, and Sheffield has not presented a prima facie case that Burpo was reckless with regard to the truth of his statement. Even if the grand jury's no-bill made any subsequent allegation of criminal conduct reckless, Sheffield did not present clear and specific evidence that the statement to Staff occurred after the grand jury's decision. We find no clear and specific evidence that, when attributing "criminal conduct" to Sheffield in a statement to Staff, appellants either knew that Sheffield's conduct was not criminal or entertained serious doubts about the truth of their statements. *See St. Amant*, 390 U.S. at 731.

**(3) Statements to Laredo Police Association President Luis Dovalina** by CLEAT Region 2 Director Mark Guerra that "it could go criminal, for what [Sheffield] did." Dovalina said Burpo "informed me that it was 'going to court.'" Other CLEAT officials "stated to me that criminal charges could be filed against Sheffield by CLEAT for what Mr. Sheffield had done."

14

As with the statements to Staff, Sheffield did not pinpoint the timing of these alleged communications. It is also not clear exactly what it means for charges to "go criminal." This lack of specificity undermines Sheffield's attempt to make a prima facie case of defamation. Reaction to Sheffield's actions "*could*" have "go[ne] criminal"—and arguably did, briefly, in the Williamson County District Attorney's presentation of the allegations to the grand jury. Similarly, "criminal charges *could* [have been] filed," and appellants attempted to make that happen by pursuing their presentation to the grand jury. The allegations did in fact go "to court"—arguably in the grand jury presentation and definitely in the civil action. Sheffield failed to show by clear and specific evidence a prima facie case that appellants' statements to Dovalina were not true, much less that appellants either knew that Sheffield's conduct was not criminal or entertained serious doubts about the truth of their statements. *See id.* As such, Sheffield has failed to carry his burden to present a prima facie case that CLEAT defamed him with the statements made by CLEAT staff.

We sustain appellants' third issue with respect to the communications described in paragraphs 1, 2, and 3 above. The trial court erred if it concluded that Sheffield made a prima facie case of defamation with respect to the communications described in those three paragraphs.

## IV. Constitutional challenges

Sheffield contends that the TCPA is unconstitutional because its proof requirements unreasonably restrict his right of access to the courts for redress of his defamation claim and because the definition of the right to freely associate is vague and overbroad on its face or as applied.

*Open courts*

The Texas Constitution provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. To prove that the statute violates the open-courts provision, Sheffield must show that (1) a cognizable common-law cause of action is being restricted and (2) the restriction is unreasonable or arbitrary when balanced with the statute's purpose and basis. *Hebert v. Hopkins*, 395 S.W.3d 884, 901 (Tex. App.—Austin 2013, no pet.) (citing *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex. 1983)). Defamation is undisputedly a common-law cause of action. *Cf. Houston Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 583 (Tex. App.—Austin 2003, no pet.).

Sheffield argues that the open courts provision of the Texas Constitution guarantees, among other things, that (1) the Legislature cannot impede access to the courts through unreasonable financial barriers, and (2) meaningful remedies must be afforded so that the Legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress. *See Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex. 1994); *see also* Tex. Const. art. I, §§ 8, 13. "A statute or ordinance that unreasonably abridges a justiciable right to obtain redress for injuries caused by the wrongful acts of another amounts to a denial of due process under article I, section 13, and is, therefore, void." *Sax*, 648 S.W.2d at 665. A claim of unconstitutionality under the open courts provision will only succeed if the claimant (1) has a cognizable common-law cause of action being restricted by a statute, and (2) the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Id.* at 666. In applying this test, we consider both the statute's

general purpose and the extent to which the claimant's right to bring a common-law cause of action is affected. *See id.*

Sheffield contends that the TCPA unreasonably restricts his ability to pursue his claim for defamation in the following ways: (1) provisions that purport to impose a higher standard of proof than would ordinarily be required for the plaintiff/respondent to prevail at trial; (2) unreasonable prohibitions, limitations or restrictions on discovery prior to the hearing on the motions to dismiss (particularly when coupled with the expedited notice/hearing requirements under the act); and (3) mandatory (non-discretionary) fee awards and sanctions upon dismissal. We will consider these in turn.

We find no provision in the TCPA that purports to impose a higher standard of proof than would be required at trial. If the defendant shows by a preponderance of the evidence that the legal action impinges on a specified right, the TCPA requires only that the claimant produce evidence that establishes a prima facie case. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). "A prima facie case represents the minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true." *Rodriguez v. Printone Color Corp.*, 982 S.W.2d 69, 72 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (quoting *Rosales v. H.E. Butt Grocery Co.*, 905 S.W.2d 745, 748 (Tex. App.—San Antonio 1995, writ denied)). That standard does not increase the burden of proof. The characterization of the evidence needed to support the prima facie case as "clear and specific" does not alter the burden or cause it to exceed a preponderance of the evidence. This TCPA motion-to-dismiss process imposes a burden to produce evidence almost certainly sooner than a typical trial, but so do the summary-judgment processes. *See* Tex. R. Civ. P. 166a. Sheffield

17

has not shown that the TCPA requires a higher standard of proof, much less one that violates the open-courts provision of the Texas constitution.

Sheffield also attacks the restrictions on discovery during the pendency of the motions to dismiss. Motions to dismiss under the TCPA must be filed, heard, and ruled upon within 120 days of the service of the lawsuit, with some leeway upon a showing of good cause by the party (for the motion) or the court (for holding a hearing). The motions to dismiss under the TCPA must be filed no later than the sixtieth day after the action was served, unless the court extends the time to file a motion on a showing of good cause. Tex. Civ. Prac. & Rem. Code § 27.003(b). The hearing must be held not later than thirty days after the motion was served unless the court's docket requires a later hearing. *Id.* § 27.004. The court must rule no later than thirty days after the hearing. *Id.* § 27.005(a). The filing of a motion to dismiss under the TCPA automatically stays all discovery. *Id.* § 27.003(c). The stay may be lifted—on motion by a party or the court and a showing of good cause—to permit specific and limited discovery relevant to the dismissal motion. *Id.* § 27.006(b).

Sheffield has not shown that these restrictions are unreasonable. The TCPA's express purpose is to balance protections for persons exercising their constitutional rights of expression and association with those of persons filing meritorious lawsuits for demonstrable injury. *Id.* § 27.002. The provisions staying discovery are tempered by provisions permitting discovery upon a showing of good cause. These provisions can curtail potentially costly discovery in a possibly meritless case, thus serving the TCPA's goal of keeping litigation from being used to chill the exercise of constitutional rights, but can permit discovery upon a showing of good cause. They do not on their face violate the open-courts provision. Our review of the case on appeal does not reveal how the stay

18

of discovery as applied here prevented Sheffield from establishing a prima facie case through clear and specific evidence and violated the constitution.

Finally, Sheffield has not shown that fees awards are mandatory under the TCPA, much less that they violate the open-courts provision. The fees provisions are as follows:

> If the court orders dismissal of a legal action under this chapter, the court shall award to the moving party:
>
> > (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and
> >
> > (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

*Id.* § 27.009(a). While the introductory language of subsection (a) uses the seemingly mandatory term "shall award," the subsequent language tempers the conditions for making an award with discretionary terms like "justice" and "equity" and "sufficient to deter." *Id.* A trial court may decide that justice and equity do not require that costs, fees, or expenses be awarded and may determine that no sanctions are needed to deter the plaintiff from bringing similar actions. These provisions do not mandate an award and do not violate the open-courts guarantees on their face. As no fees were awarded, the provisions as applied here did not violate the open-courts provisions.

*Vagueness and overbreadth*

Sheffield attacks the TCPA's definition that the exercise of the right of association encompasses "a communication between individuals who join together to express, promote, pursue or defend common interests." Tex. Civ. Prac. & Rem. Code § 27.001(2). He complains that this

definition exceeds the actual constitutional right, is overbroad facially and/or as applied, and is unconstitutionally vague because it could encompass all communications or activities of any group. He cites no authority in support of his argument as required. *See* Tex. R. App. P. 38.1(I), 38.2(a).

We note first that the TCPA's relationship to First Amendment protections is somewhat unusual. In relevant part, the First Amendment prohibits the government from making laws abridging freedom of speech or the right of the people to peaceably assemble. *See* U.S. Const. amend. I. The TCPA attempts to shield people exercising certain rights protected by the First Amendment not from governmental restriction, but from meritless civil claims. *See* Tex. Civ. Prac. & Rem. Code §§ 27.002, .005. Rather than imposing a governmental limit on speech or association, the TCPA places preliminary proof requirements on parties to litigation concerning the results of the exercise of those rights.

Because of the nature of the relationship between the TCPA and the First Amendment, Sheffield's complaint that the definition of the right of association is too broad assumes an unusual posture. A statute is considered impermissibly overbroad only if, in addition to constitutionally proscribed activities, it restricts speech or conduct protected by the First Amendment. *Walker v. State*, 222 S.W.3d 707, 713 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). In other words, an overbroad statute improperly *limits* protected freedoms. *Cf. id.* In this case, however, Sheffield complains that the statutory "definition exceeds the scope of the Constitutional right of association"—that is, that the statute provides more protection for freedom of association than the constitution does. We do not find support for the proposition that a statute that provides extra protection for a right violates the constitutional provision guaranteeing that right. *See Marquez v. State*, 725 S.W.2d 217, 243 (Tex. Crim. App. 1987) ("[I]t is by now axiomatic that

20

the federal constitution provides only a minimum standard of protection to be afforded citizens of the several states and the states are free to provide greater protection by constitution or statute.")

Also, the challenged definition of the exercise of the right of association is not unconstitutionally vague. Sheffield complains that the TCPA's definition of the exercise of the right of free association "could literally encompass all communications or activities of any corporation, partnership, joint venture, limited liability company, organization agency, association or group." A statute is void for vagueness if it (1) fails to give a person of ordinary intelligence fair notice of the conduct prohibited or (2) is so indefinite that it encourages arbitrary and discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also Clark v. State*, 665 S.W.2d 476, 482 (Tex. Crim. App. 1984). To be void for vagueness, a statute must be so vague and indefinite as really to be no standard at all. *Jones v. City of Lubbock*, 727 F.2d 364, 373 (5th Cir. 1984). We note initially that the TCPA does not prohibit any activity. Sheffield argues that the plain language of the statute may invite an interpretation that it applies to an extremely broad right to association, but that does not render the TCPA's definition improperly vague. The legislature's choice to require a preliminary substantiation of legal actions relating to a broad range of organizational communications does not create difficulty in determining whether or how it applies. We need not determine the outer constitutional limits of the TCPA, only whether the TCPA's terms are permissible as applied to the statements at issue in this case, each of which generally relate to CLEAT's internal affairs which are a common interest among CLEAT's members. The TCPA's definition of the exercise of free association is not unconstitutionally overbroad or void for vagueness as Sheffield contends.

21

## V. Attorney's fees

Appellants urge by their fourth issues that the trial court erred by failing to award them attorney's fees. As this is an interlocutory appeal and we have reversed some aspects of the trial court's denial of appellants' motions to dismiss, affirmed other aspects, and determined that the attorney's fees provisions are not mandatory, we conclude that the trial court should consider whether attorney's fees are warranted when it resumes its consideration of this case. Our resolution of the first three issues has rendered our consideration of appellants' fourth issues moot.

## CONCLUSION

We affirm the trial court's denial of the motions to dismiss Sheffield's claims that CLEAT defamed him through John Curtis's statements in numbered paragraphs 4 and 5 set out in section I of the Discussion above. We find that appellants did not make the required showing under the TCPA that those claims are within the scope of the exercise of appellants' right of association, which was the only constitutional basis for Sheffield's objection preserved for appeal.

We reverse the trial court's denial of the motions to dismiss Sheffield's claim that Burpo and other CLEAT employees defamed him in the statements described in numbered paragraphs 1, 2, and 3 set out in section I of the Discussion above—namely, the January 4 email to CLEAT board and staff and alleged statements to Mike Staff and Luis Dovalina. We conclude that Sheffield did not make the required prima facie showing under the TCPA on each element of his defamation claims relating to the statements in paragraphs 1, 2 and 3, and we dismiss those claims.

We reject Sheffield's arguments that the TCPA is unconstitutional and return the issue of costs and attorney's fees to the trial court. The case may proceed in the trial court consistent

22

with our resolution of these issues on interlocutory appeal. The stay of discovery imposed by this Court's order dated February 26, 2013, will expire on the same date as this Court's plenary power over this appeal expires.

 

 

_____

Jeff Rose, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed in part; Reversed and Dismissed in part; Remanded in part

Filed:   January 31, 2014